UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20216-RAR

JESSE GUERRERO,

     Plaintiff,

v.

MAGNUS SPORTS, LLC, *et al.*,

     Defendants.

_____/

## ORDER GRANTING MOTIONS TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss ("Motion"), [ECF No. 86], and Defendant Magnus Sports, LLC's Motion to Dismiss Plaintiff's Third Complaint ("Magnus Sports Motion"), [ECF No. 87].   Defendants ask this Court to dismiss Plaintiff's Second Amended Complaint ("Complaint"), [ECF No. 80], on the grounds that Plaintiff did not have any contractual relationship or employment relationship with Defendants.  *See* Mot. at 1–2. Defendant Magnus Sports, LLC ("Magnus Sports") joins Defendants' Motion in full and also asks this Court to dismiss Magnus Sports from this action "for an independent reason: all of Plaintiff's claims against Magnus Sports share the foundational—but false—premise that Praver's and Shapiro's alleged interactions with Plaintiff may be imputed to Magnus Sports." Magnus Sports Mot. at 2.  Plaintiffs have responded to each Motion.[1]   The Court having carefully considered the relevant submissions and applicable law, it is hereby

---

[1] *See* Pl.'s Resp. to Defs.', Barry Praver and Scott Shapiro, Mot. to Dismiss ("Resp. to Mot."), [ECF No. 93]; Pl.'s Resp. to Def.'s, Magnus Sports, LLC, Mot. to Dismiss ("Resp. to Magnus Sports Mot."), [ECF No. 92].  Defendants also filed Replies to the Motions.  *See* Individual Defs.' Reply in Supp. Mot. to Dismiss ("Defs.' Reply"), [ECF No. 97]; Def. Magnus Sports, LLC's Reply in Supp. Mot. to Dismiss Pl.'s Third Compl. ("Magnus Sports' Reply"), [ECF No. 96].

**ORDERED AND ADJUDGED** that Defendants' Motions, [ECF Nos. 86, 87], are **GRANTED** for the reasons stated herein.  Plaintiff's Complaint, [ECF No. 80], shall be **DISMISSED** *with prejudice*.

## BACKGROUND

Plaintiff Jesse Guerrero brings this action against Defendants Magnus Sports, LLC, Barry Praver, and Scott Shapiro.  *See* Compl., [ECF No. 80] at 1.  The Court begins with a brief overview of the parties' respective roles and relationships.[2]  Plaintiff is a citizen of California, and a longtime family friend of Vladimir Guerrero, Jr., a Major League Baseball player ("Player").  Compl. ¶¶ 1, 4.  Defendant Magnus Sports is a marketing company that is owned and operated by Michel Vega and Marco Antonio Muñiz; Magnus Sports is incorporated in Delaware and has its principal place of business in Miami, Florida.  Compl. ¶ 5; Magnus Sports Mot. at 1.  Defendants Barry Praver ("Praver") and Scott Shapiro ("Shapiro") are sports agents who are citizens of Florida, and who own and operate Praver Shapiro Sports Agency Management, LLC ("Sports Agency").  Compl. ¶¶ 6–7; Magnus Sports Mot. at 1.

Plaintiff alleges that Praver and Shapiro were the Chief Executive Officer and President, respectively, of "Magnus Baseball," which arose under a collaboration agreement between Magnus Sports and Sports Agency ("Collaboration Agreement").   Compl. ¶¶ 6–7, 18.  Specifically, under the Collaboration Agreement, Plaintiff alleges that the two entities "collaborated to recruit professional athletes to have Sports Agency serve as the professional athletes' agent and/or manager which Magnus [Sports] provided branding, imaging, publicity, and social media strategy services to the professional athletes."  Compl. ¶ 18.  Additionally,

---

[2]  The background facts are taken from the Complaint and, at this stage of the proceedings, are taken as true.  *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).  In the event of any discrepancy between page numbers in the footer of a document and those in the CM/ECF heading, the page numbers used herein refer to those reflected in the CM/ECF heading.

"Praver and Shapiro had the authority to bind Magnus [Sports] to any and/all contracts and/or deals, including the contract and deals referenced herein that are the subject of this litigation." Compl. ¶ 19.[3]

In February 2016, Plaintiff alleges that he was "retained [by Player] as a consultant to assist [him] with finding business opportunities related to his playing professional baseball" such as facilitating Player's provision of autographs on baseball cards and stickers. Compl. ¶ 20. After Defendants learned of Plaintiff's personal and professional relationship with Player and his family, Plaintiff alleges that they "sought to take advantage of that relationship to have Plaintiff become represented by Defendants, pursuant to the [Collaboration] Agreement." Compl. ¶ 21.

Thereafter, on or about June 10, 2017, Plaintiff informed Shapiro that Player was exploring the possibility of switching agencies, prompting Shapiro to express interest in representing Player. Compl. ¶ 22. Plaintiff alleges that Shapiro indicated that if "Plaintiff could get [] Player to agree to have [Praver and Shapiro] serve as his agent[s], then [they] would hire Plaintiff to serve as an intermediary between Defendants and [] Player and serve as what amounts to be a personal assistant for [] Player" with compensation according to the following terms:

> a. "An amount equal to twenty percent (20%) of all of MLB Player's endorsement deals secured by Plaintiff on behalf of MLB Player for Magnus, to be paid on a quarterly basis;

---

[3] Unsurprisingly, Magnus Sports responds that the Collaboration Agreement did not create an entity named "Magnus Baseball;" that it did not create a partnership or joint venture involving Magnus Sports and Sports Agency; and that neither Praver nor Shapiro were executives, officers, or employees of Magnus Sports. Magnus Sports Mot. at 6. Rather, the Collaboration Agreement was a limited three-year licensing and marketing agreement expiring in October 2018 under which Praver and Shapiro, by and through Sports Agency, "would be 'solely responsible for all activities in connection with representing [baseball players],' including arranging 'concierge services' and 'logistics' for players." *Id.* at 5–6 (quoting Collaboration Agreement, [ECF No. 87-1] at 3). The Court addresses this contention herein. *See supra* pp. 8–9.

  b. An amount equal to ten percent (10%) of all of MLB Player's endorsement deals secured on behalf of MLB Player for Magnus by anyone else other than Plaintiff to be paid to Plaintiff on a quarterly basis, unless the deal was secured by a Canadian contact, and in that case, Plaintiff would be entitled to five percent (5%);

  c. Magnus and Plaintiff would pay for MLB Player's living expenses (rent, utilities, etc.) while MLB Player was in the minor leagues with Plaintiff advancing all of the expenses and Magnus reimbursing Plaintiff for fifty percent (50%) of those expenses with the reimbursements being paid on a quarterly basis concurrent with the endorsement deal compensation payments; and

  d. If and when MLB Player reached the major league level, Magnus would pay Plaintiff an amount equal to two percent (2%) of MLB Player's major league salary, paid from the five percent (5%) commission that Magnus would receive as MLB Player's agent, with such payments being made by the end of November of each major league season in which MLB Player played."

Compl. ¶ 22.  That same day, Plaintiff received a call from Shapiro, indicating that he had conferred with Praver and confirming that they would like to represent Player and would compensate Plaintiff in accordance with the above terms.  Compl. ¶ 24.  Plaintiff orally accepted this offer, and alleges that, "as a result of his acceptance of the offer, an oral employment agreement was created."  Compl. ¶ 25.

Thereafter, Praver sent an email to Plaintiff with documentation to memorialize the agreement between Player and Defendants.  Compl. ¶ 26.  And Plaintiff, upon request from Praver and Shapiro, traveled to South Bend, Indiana to facilitate Player's signature of the documents.  Compl. ¶ 27.  Plaintiff fulfilled this request, and Player then terminated the agency relationship with his prior agent on or about July 2, 2017.  Compl. ¶¶ 27–28.

Throughout the next four years, Plaintiff alleges that he undertook the following tasks with respect to the Player at the request of Praver and Shapiro:

- In May 2018, Plaintiff forwarded an email regarding a baseball bat signing opportunity to Praver, who then requested a phone call with Plaintiff to discuss the email, Compl. ¶ 32;

- In May 2019, Shapiro emailed Plaintiff requesting that Plaintiff review a PowerPoint deck regarding an American Express commercial with Plaintiff, Compl. ¶ 37;

- In August 2019, Shapiro emailed Plaintiff asking him to confer with Player about various business opportunities and scheduling matters, Compl. ¶ 39;

- In September 2019, Shapiro sent a text message to Plaintiff requesting that he obtain Player's availability regarding a scheduling matter, as well as Player's review and approval of the American Express videos, Compl. ¶ 40;

- Towards the end of 2021, Plaintiff assisted Player and Praver and Shapiro in securing a new contract with The Topps Company, a trading card and collectible company, for $5,000,000 that would take effect on June 2022, Compl. ¶ 48; and

- At various times from June 2017 onwards, Praver and Shapiro requested Plaintiff's assistance with ensuring that Player would show up for appearances for product endorsement deals, "including personal[] appearances for a credit card company and a sunflower seed company." Compl. ¶ 50.

From 2019 to 2021, Plaintiff received sums of money from Defendants in the amounts of $17,500, $23,000, $14,670, $19,400, $34,182, and $27,500.  Compl. ¶¶ 36, 38, 41, 42, 43, 44. And, according to Plaintiff, the last payment made by Defendants was "on December 8, 2021, that represented Plaintiff's compensation in the amount of twenty percent (20%) from MLB Player's marketing and endorsement deals and Plaintiff's expense reimbursement."  Compl. ¶ 49.

As these events and interactions unfolded, in April 2019, Player moved from the Minor Leagues to a Major League Baseball team, which, according to Plaintiff, "was the condition that needed to occur in order for [Defendants] to receive five percent (5%) of [] Player's salary as commission and put [Defendants] in a position to pay Plaintiff his portion of that commission."

Compl. ¶ 34.  However, when Plaintiff met with Praver and Shapiro in San Diego, California on December 5, 2022, they advised Plaintiff that they "had no intention of paying Plaintiff for any portion of the commission that [they had] received from [] Player's salary and only intended to pay him a bonus in an equitable amount to be determined."  Compl. ¶ 55.

Plaintiff interpreted these statements to be a repudiation of their prior oral agreement, *see* Compl. ¶ 56, and, on November 29, 2023, he filed the instant case against Defendants in the Superior Court for the County of Los Angeles.  After the case was removed to the Central District of California on January 19, 2024, *see* [ECF No. 1], Plaintiff filed his First Amended Complaint.  *See* [ECF No. 27].  Thereafter, on January 15, 2025, this case was transferred to the Southern District of Florida.  *See* [ECF Nos. 45, 46].  On June 2, 2025, Plaintiff filed his Second Amended Complaint, alleging nine causes of action against Defendants: (1) breach of contract; (2) breach of oral joint venture agreement; (3) unjust enrichment; (4) declaratory relief; (5) breach of implied covenant of good faith and fair dealing; (6) promissory estoppel; (7) fraudulent misrepresentation; (8) tortious interference with business relationships; and (9) lost wages.  *See* Compl. ¶¶ 59–115.

## <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiffs receive the benefit of all favorable inferences that can be drawn from the facts alleged.  *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

## ANALYSIS

Defendants seek to dismiss all of Plaintiff's claims in this action. *See generally* Mot. Defendant Magnus Sports joins the Motion in full, and also submits a separate Motion to Dismiss, asking the Court to dismiss Magnus Sports from this action under Rule 12(b)(6). *See generally* Magnus Sports Mot. Accordingly, the Court first considers whether Magnus Sports is a proper party to this action. Finding that it is not, the Court then proceeds to evaluate the merits of Plaintiff's claims against Praver and Shapiro, the remaining Defendants in this action.

### I. Magnus Sports' Motion to Dismiss

Magnus contends that "all of Plaintiff's claims against Magnus Sports share the foundational—but false—premise that Praver's and Shapiro's alleged interactions with Plaintiff may be imputed to Magnus Sports." *See* Magnus Sports Mot. at 2. According to Magnus Sports, "Magnus Sports and [Sports Agency] were separate entities that merely executed [the Collaboration Agreement], and neither Praver nor Shapiro ever had authority to bind Magnus Sports to contracts with third parties (such as Plaintiff)." *Id*. In support of its position, Magnus Sports challenges the three theories in Plaintiff's Complaint which "support [Plaintiff's]

contention that Praver and Shapiro's alleged actions are attributable to Magnus Sports." *Id.* Specifically, Magnus Sports notes that Plaintiff fails to allege that: (1) Praver and Shapiro were employees or agents of Magnus Sports; (2) Magnus Sports or Sports Agency formed a partnership or joint venture; and (3) Magnus Sports authorized Praver's or Shapiro's alleged actions related to the purported oral agreement. *See generally* Magnus Sports Mot. at 9–16. The Court considers each of these arguments in turn.

*First*, Plaintiff alleges that Praver and Shapiro were "agent[s] and employee[s] of [] their Co-Defendant [Magnus Sports]", and that Praver and Shapiro were the Chief Executive Officer and President, respectively, of Magnus Baseball.  Compl. ¶¶ 6–8; Resp. to Magnus Sports Mot. at 2–3.   Magnus Sports responds that this "bare, conclusory allegation" is "unsupported by any factual allegations . . . [a]nd [] is refuted both by more specific allegations in the [] Complaint and by the Collaboration Agreement."  Magnus Sports Mot. at 9.  In support of this argument, it attaches the Collaboration Agreement as an exhibit, which establishes that, according to Magnus Sports, Plaintiff's "bare assertion that Praver and Shapiro were employees of Magnus Sports [is] false" and that Sports Agency is a "separate entity." *Id.* at 10.

The Court, in its independent review of the Collaboration Agreement, finds nothing to suggest that Praver and Shapiro were intended to become employees of Magnus Sports. *See generally* Collaboration Agreement, [ECF No. 87-1].  Indeed, Sports Agency represents and warrants that "Barry Praver and Scott Shapiro are [] members of [Sports Agency][.]. *Id.* § 8(c)(iv).  And, Magnus Baseball, under the Collaboration Agreement, is not a separate entity, but rather a "brand name" subsumed within the "Magnus IP", for which Sports Agency is granted "an exclusive, non-transferable, non-sublicensable, royalty-free license[.]" *Id.* § 3(e)(ii).  The Court therefore agrees with Magnus Sports that Magnus Baseball is "not an entity

capable of having executives, officers, or employees." Magnus Sports Mot. at 10 n.4. Accordingly, because the authenticity and contents of the Collaboration Agreement are not in dispute, and "the exhibit[] contradict[s] the general and conclusory allegations of the pleading," the Court finds that Praver and Shapiro are not employees of Magnus Sports. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla*., 48 F.4th 1222, 1232 (11th Cir. 2022) (internal quotation and citation omitted).

Plaintiff's claim that Praver and Shapiro were agents of Magnus Sports fares no better. "Under Florida law, essential elements of an actual agency relationship are: '(1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent.'" *SR20 Holdings, LLC v. Old Republic Aerospace, Inc*., No. 20-CV-61337, 2020 WL 6470637, at *1 (S.D. Fla. Sept. 22, 2020) (quoting *Tello v. Royal Caribbean Cruises LTD*, No. 11-CV-24503, 2013 WL 1500573, at *6 (S.D. Fla. Mar. 30, 2013)). Magnus Sports maintains that Plaintiff's conclusory allegation that "each of the Defendants was the agent . . . of each of their Co-Defendants", *see* Compl. ¶ 8, "does not remotely satisfy Plaintiff's burden to plausibly allege that Praver and Shapiro were agents of Magnus Sports[.]" Magnus Sports Mot. at 11. Indeed, Plaintiff has not alleged the legal nor factual elements to establish an agency relationship. And Magnus Sports is correct that "the Collaboration Agreement confirms the absence of control that would be necessary to plausibly allege an agency relationship[.]" *Id*. Plaintiff's only response is that the question of whether an agency relationship exists is a "question[] of fact which cannot be decided on a motion to dismiss." Resp. to Magnus Sports Mot. at 3.

However, as this Court has explained, "[w]hile the question of whether an agency relationship exists is a factual question, it is proper for a district court to assess the sufficiency of the factual allegations at the motion to dismiss stage." *SR20 Holdings, LLC*, 2020 WL

6470637, at *1 (citing *Fojtasek v. NCL*, 613 F. Supp. 2d 1351, 1357 (S.D. Fla. 2009)). Accordingly, Plaintiff's deficient allegation of an agency relationship cannot be saved by the pleading standard at this stage of the litigation.

*Second*, Magnus Sports asserts that Plaintiff has failed to allege that Magnus Sports and Sports Agency formed a partnership or joint venture.  "Under Florida law, a joint venture is a form of partnership, and both types of entities are generally governed by the same rules of law." *Williams v. Obstfeld*, 314 F.3d 1270, 1275 (11th Cir. 2002) (citing *Kislak v. Kreedian*, 95 So. 2d 510, 514 (Fla. 1957)).  A partnership is formed "only where 'both parties contribute to the labor or capital of the enterprise, have a mutuality of interest in both profits and losses, and agree to share in the assets and liabilities of the business.'"  *Id.* (quoting *Dreyfuss v. Dreyfuss*, 701 So. 2d 437, 439 (Fla. 3d DCA 1997)).  And a joint venture is similarly created by a contractual relationship, either express or implied, which consists of the following elements: "(1) a common purpose; (2) a joint proprietary interest in the subject matter; (3) the right to share profits and duty to share losses, and (4) joint control or right of control."  *Id.* at 1275–1276 (citations omitted).

Magnus Sports asserts that "Plaintiff does not acknowledge these necessary prerequisites for establishing a partnership or joint venture, and he makes no attempt to satisfy them with factual allegations."  Magnus Sports Mot. at 13.  Further, the Collaboration Agreement "nowhere mentions coownership or joint control; rather, it provides that each entity would be responsible for different tasks and each would control its distinct areas of work—as is the case in nearly every contract executed by two separate businesses." *Id.*  Plaintiff responds that "because of the [Collaboration Agreement,] Praver and Shapiro had the authority to bind Magnus to any/all contracts and/or deals, including the contract and deals that are the subject of the litigation."  Resp. to Magnus Sports Mot. at 3.  However, in support of this assertion,

Plaintiff only cites to his conclusory allegation in the Complaint, *see* Compl. ¶ 19, and fails to rebut the record evidence in the Collaboration Agreement indicating that Magnus Sports and Sports Agency are in fact separate entities. *See FW Distrib., LLC v. J.P. Morgan Chase Bank, N.A.*, No. 24-21385, 2024 WL 4665255, at \*14 (S.D. Fla. Nov. 4, 2024) ("Whether a relationship constitutes a partnership is a legal conclusion and merely calling the relationship a joint venture or a partnership does not make it so." (internal quotations and citations omitted)). Accordingly, Plaintiff has failed to allege facts to plausibly support an inference that a partnership or joint venture was formed.

*Lastly*, Magnus Sports asserts that Plaintiff fails to allege that Magnus Sports "authorized" or "ratified" Praver and Shapiro's alleged conduct giving rise to liability. Magnus Sports Mot. at 14. Specifically, Plaintiff explains that "no factual allegation in the [] Complaint supports the contention that Magnus Sports *pre-authorized* Praver's and Shapiro's actions" and that "Plaintiff's sparse factual allegations supporting his [*post-hoc*] ratification theory do not come close to . . . establish[ing] that Magnus Sports' principals had any—let alone *full*—knowledge of the alleged oral contract []; and none suggests that Magnus Sports agreed to be bound by that supposed agreement." *Id*. at 14–16. Further, Plaintiff argues that this theory must fail because Plaintiff has not plausibly alleged that Praver or Shapiro were agents of Magnus Sports. *Id*. at 16. The Court agrees.

Ratification "is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1122 (S.D. Fla. 2021) (quoting Restatement Third of Agency § 4.01(1)). Thus, "[w]hile a principal may become liable for the acts of its agent when it ratifies an originally unauthorized act, the existence of a principal-agent relationship is a *pre-requisite for ratification*." *Id*. (quoting *Cabrera v. Gov't Employees Ins. Co.*, 452 F. Supp. 3d 1305, 1320

(S.D. Fla. 2014) (emphasis in original).  Here, as in *Corsi*, "[Plaintiff's] ratification theory []
fails for the same reason his agency theory [] fails"— namely, that Plaintiff has failed to plead
the legal and factual elements to establish an agency relationship.  *Id*.  And, even if he had,
Plaintiff's allegations that Magnus Sports implicitly ratified the agreement by providing
bonuses to Plaintiff, providing him concert tickets on two occasions, and arranging Plaintiff's
travel on the private jet of one of Magnus Sports' owners, *see* Compl. ¶ 58, are insufficient.
These actions appear to be disconnected from Praver and Shapiro's dealings with Player and
therefore cannot establish that Magnus Sports "was fully informed and that [it] approved of
[Praver and Shapiro's actions.]"  *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d
1318, 1323 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Parcel
Serv., Inc. v. Buchwald Jewelers*, 476 So. 2d 772, 773 (Fla. 3d DCA 1985)); *see also In re Sec.
Grp.*, 926 F.2d 1051, 1055 (11th Cir. 1991) ("A ratification occurs when the benefits of the
purportedly unauthorized acts are accepted with full knowledge of the facts under
circumstances demonstrating the intent to adopt the unauthorized arrangement.").

In sum, Plaintiff has failed to demonstrate that Praver and Shapiro were employees or
agents of Magnus Sports; that Magnus Sports and Sports Agency formed a partnership or joint
venture; or that Magnus Sports ratified or authorized the actions of Praver and Shapiro.  The
Court thus finds that dismissal of Magnus Sports as a party to this action is warranted.

### II.  Defendants' Motion to Dismiss

Having found that Defendant Magnus Sports is not a proper party to this action, the
Court proceeds to evaluate Plaintiff's claims against the remaining Defendants, Praver and
Shapiro (hereafter "Defendants").  Defendants argue that "Plaintiff fails to state any claim for
relief, largely because each claim relies on a stale, ambiguous, and plainly unenforceable
alleged verbal promise."  Mot. at 5.  Specifically, Defendants maintain that Plaintiff fails to

allege that a valid, enforceable contract was formed, and that "Counts One, Two, Three, Four, Five, Six, and Nine are all based on an alleged verbal agreement that is clearly unenforceable under the statute of frauds." *Id*.  And as to Counts Seven and Eight for fraudulent misrepresentation and tortious interference, respectively, Defendants assert that Plaintiff fails to allege any fraud outside the alleged contract and any actual interference with the contract. *Id*. at 18–20.

The Court agrees, finding that the oral agreement between Plaintiff and Defendants is not a valid contract given a lack of mutual assent.  Even if it were, the statute of frauds would bar its enforcement, given that it is incapable of being performed within one year.  And, as to the counts for fraudulent misrepresentation and tortious interference, these are barred by Florida's statute of limitations.

### a. *Plaintiff Has Failed to Allege the Existence of a Valid, Enforceable Oral Contract*

"Under Florida law, the question of whether a valid contract exists is a threshold question of law that may be properly decided by the court." *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014) (citing *Acumen Constr., Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. 2d DCA 1993)).  The existence of a contract requires a Plaintiff to plead: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id*. at 741 (internal quotations and citations omitted).  And "oral contracts [are] subject to all basic requirements of contract law[.]" *Id*.  Plaintiff alleges that Defendants promised that if "Plaintiff could get [] Player to agree to have [Defendants] serve as his agent, then [they] would hire Plaintiff to serve as intermediary between Defendants and [] Player and serve what amounts to be a personal assistant for [] Player and pay Plaintiff compensation[.]"  Compl. ¶ 22.  Plaintiff subsequently accepted this offer, and, as a result, "an oral employment agreement was created." *Id*. ¶¶ 24–

25.  And in Count I for Breach of Contract, Plaintiff characterizes this as an agreement for Plaintiff to "be compensated if he facilitated an arrangement such that Defendants would serve as agents for and/or manage [] Player[,]" but mentions nothing about the alleged employment contract.  *Id*. ¶ 60.

Defendants highlight the inconsistencies in Plaintiff's characterization of the contract, alleging that this "shapeshifting description" of the contract is imprecise, contingent, and speculative, such that "the purported 'contract' is ultimately illusory and unenforceable."  Mot. at 7.  Plaintiff responds that there was an enforceable contract contingent upon his facilitation of a manager/agent relationship between Defendants and Player.  Resp. to Mot. at 4–5.  But Plaintiff fails to allege the contractual terms of his purported employment relationship and what specific obligations would entitle him to compensation.  *See* Defs.' Reply at 3 ("*What exactly was Plaintiff obligated to do to earn the alleged compensation?* Did he have to perform services, or not?").  And, according to Defendants, Plaintiff's failure to "articulate those duties" precludes a finding that there was "'mutual assent to a certain and definite proposition' to form a contract with the Defendants[.]"  *Id*. (quoting *ABC Liquors, Inc. v. Centimark Corp.*, 967 So. 2d 1053, 1056 (Fla. 5th DCA 2007)).

"In order to form an enforceable oral contract, 'there must be a meeting of the minds on all essential terms and obligations of the contract.'"  *Duffy v. M/Y TIFFANY*, No. 07-60924, 2007 WL 9700993, at *2 (S.D. Fla. Oct. 18, 2007) (quoting *Browning v. Peyton*, 918 F.2d 1516, 1521 (11th Cir. 1990)).  Because "essential terms will vary widely according to the nature and complexity of each transaction [this inquiry] is evaluated on a case by case basis."  *PB Legacy, Inc v. Am. Mariculture, Inc*., No. 2:17-CV-9-FTM-29NPM, 2020 WL 1820509, at *10 (M.D. Fla. Apr. 10, 2020) (citing *Socarras v. Claughton Hotels, Inc*., 374 So. 2d 1057, 1060 (Fla. 3d DCA 1979)).  And, in determining whether mutual assent exists, Courts generally

consider several factors including "the type of contract at issue, the number of terms agreed upon relative to all of the terms to be included, the number of details yet to be ironed out, the relationship of the parties, and the degree of formality attending similar contracts, among other factors." *Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249, 1252 (Fla. 3d DCA 1998) (quoting 1 RICHARD A. LORD, WILLISTON ON CONTRACTS, § 4:8 at 305–06 (4th ed. 1990)).

Here, accepting Plaintiff's allegations as true, the Court finds that ambiguity persists as to whether Plaintiff would be considered an employee of Defendants or entitled to the benefits of the contract by merely facilitating the Player/Agent relationship.  This ambiguity precludes a finding of mutual assent as to the essential terms of the contract.  Indeed, Plaintiff's argument that he "successfully facilitated" this relationship "such that Plaintiff's payment terms of the contract were triggered", *see* Resp. to Mot. at 4, is contradicted by the Complaint, which clearly states that Plaintiff would receive the alleged contractual compensation for "serv[ing] as what amounts to be a personal assistant for [] Player[.]"  Compl. ¶ 22.  *See Midtown Realty, Inc.*, 712 So. 2d at 1252 (finding no mutual assent where "the plaintiffs [] argue[d] that the Letter of Intent contained all of the essential terms and that they intended to be bound by it [when in fact their] position [was] directly contradicted by the [plaintiff's] own writing.").

Put another way, the Complaint presents conflicting characterizations of the fundamental nature of the contract and the services that Plaintiff would have to render to be entitled to compensation.  Plaintiff responds that "Defendants are seeking for the Court to make a factual-question determination that is improper at this stage of the proceeding" and that "even extending out into later in these proceedings, the existence of a contract is a question of fact that can preclude summary judgment."  Resp. to Mot. at 4.  However, the Court's finding of a lack of mutual assent is *not* predicated on whether the contract exists, but whether Plaintiff has sufficiently *pleaded* mutual assent, "a prerequisite for the formation of any contract[.]"

*Kolodziej*, 774 F.3d at 741 (internal citation omitted).   Because the Court has not looked beyond the Complaint in identifying a lack of mutual assent regarding the contract's essential terms, this inquiry is appropriate at this stage of the proceedings.  *Morali v. Mayan*, 377 So. 3d 1182, 1184 (Fla. 4th DCA 2024) ("[A] motion to dismiss is limited to the four corners of the complaint." (citation omitted)).   Accordingly, the Court finds that Plaintiff has failed to plead the existence of a valid, enforceable oral contract.

### b.  *The Statute of Frauds Bars Enforcement of Plaintiff's Alleged Contract*

Even if Plaintiff had a valid and enforceable agreement, the statute of frauds would nevertheless bar enforcement of the alleged contract.  Florida's statute of frauds provides that "[n]o action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized."  *OJ Com., LLC v. Ashley Furniture Indus., Inc.*, 359 F. Supp. 3d 1163, 1172 (S.D. Fla. 2018), *aff'd*, 817 F. App'x 686 (11th Cir. 2020) (quoting Fla. Stat. § 725.01).[4]   The Supreme Court of Florida has held that "the statute of frauds only applies if full performance is impossible within a year.  In other words, the statute of frauds does not apply if there is a possibility 'in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.'"  *Id.* (quoting *Browning v. Poirier*, 165 So. 3d 663, 665–66 (Fla. 2015)).

---

[4] "As this action is before the court upon diversity jurisdiction, the Court applies the substantive law of the forum state, including its choice of law rules, which in this case is Florida."  *OJ Com., LLC*, 359 F. Supp. 3d at 1171 (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  The parties do not contest the Court's application of Florida's statute of frauds in determining whether Plaintiff's claims are barred.  *See* Mot. at 5 fn 4.

Defendants contend that the oral promise made by Defendants to "pay Plaintiff a percentage of future commissions from Players contracts indefinitely . . . could *not and was not* to be performed within one year." Mot. at 5–6 (emphasis in original). In fact, "the condition triggering the Agents' ability to collect a future commission on the Player's salary . . . did not occur until two years later, in 2019"—thus, the "verbal agreement [] by its very nature could not be performed within one year." *Id*. at 6.

The Court's review of the alleged contract indicates that it indeed runs afoul of the statute of frauds. According to Plaintiff, a key term of the agreement is that "*[i]f and when* MLB Player reached the major league level, [Defendants] would pay Plaintiff an amount equal to two percent (2%) of MLB Player's major league salary, paid from the five percent (5%) commission that [Defendants] would receive as MLB Player's agent, with such payments being made by the end of November of *each* major league season in which MLB Player played." Compl. ¶ 22(d) (emphasis added). Plaintiff does not allege that the agreement was memorialized in writing signed by the party to be charged. Therefore, the only question before the Court is whether the agreement is capable of full performance within a year. The clear terms of the agreement indicate that it is not.

When the agreement was purportedly entered into, Player was still playing in the Minor Leagues. Compl. ¶ 34. It was only in 2019, *two years* later, that he joined the Major Leagues, thereby triggering this condition of the agreement. *Id*. However, even assuming Plaintiff had joined the Major Leagues immediately following contract formation, the agreement requires that Plaintiff would receive payment "*each* major league season in which [] Player played." Compl. ¶ 22(d). The express language of the purported agreement therefore contemplates performance over the span of multiple years. *See, e.g., Viscito v. Fred S. Carbon Co*., 717 So. 2d 586, 587 (Fla. 4th DCA 1998) ("The fact is undisputed that the parties' oral agreement

created a business relationship that lasted over an extended and indefinite period of time. . . . As such, we believe the trial court correctly concluded that enforcement of the agreement was barred by the Statute of Frauds."); *Butterworth v. Lab'y Corp. of Am. Holdings*, 581 F. App'x 813, 819 (11th Cir. 2014) ("The Florida Statute of Frauds bars enforcement of an oral contract that was intended by the parties to last longer than a year[.]"); *Chong v. Milano*, 623 So. 2d 536, 537 (Fla. 4th DCA 1993) ("Since the business agreement was to last indefinitely, the statute of frauds bars its enforcement.").

The parties' purported contract is incapable of being performed within one year, because full performance of the contract requires payment to Plaintiff on an annual, indefinite basis. It is therefore different from the factual scenario in cases such as *Browning v. Poirier*, where the Florida Supreme Court found that there was a "possibility in law and fact that full performance" could be accomplished if "[Plaintiffs] purchased a winning lottery ticket and they split the proceeds before the expiration of one year[.]" 165 So. 3d at 666. Here, however, Plaintiff claims that he is owed the "compensation percentages [referenced herein], past and *future*", clearly evincing his belief that he is entitled to a percentage of Player's salary well beyond the course of one year. Resp. to Mot. at 11. Thus, to the extent the parties entered into a valid agreement, they "intended and contemplated that performance of the agreement would take longer than one year." *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991) (citation omitted). Indeed, to hold otherwise would render Plaintiff's claim for damages nugatory.

Plaintiff does not appear to contest Plaintiff's substantive arguments, instead challenging the applicability of the statute of frauds on procedural grounds. Specifically, Plaintiff asserts that "the Court should reject Defendants' contention about the statute of frauds at this stage of the proceedings[,]" citing a number of cases in which the applicability of the statute of frauds was determined to be a factual matter, not to be resolved on a motion to

dismiss.  *See* Resp. to Mot. at 18.  But Plaintiff's reliance on these cases is misplaced.  While Plaintiff is correct that asserting the statute of frauds as an affirmative defense *may* implicate questions of fact that cannot be decided at the motion to dismiss stage, "[a]n affirmative defense may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim, but only *if the defense is apparent on the face of the complaint*."  *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985) (emphasis added); *see also LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) ("If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6)." (citation omitted)); *Prams Water Shipping Co. v. Salvador Grp., Ltd.*, No. 09-21508, 2013 WL 3712181, at *2 n. 2 (S.D. Fla. July 12, 2013) (rejecting plaintiff's argument that defendants cannot raise the statute of frauds defense on a motion to dismiss, because such a defense can be raised if it is "apparent from the face of the complaint.").  Here, the Court's consideration of the statute of frauds at this juncture is appropriate given that it is evident from the express terms of the purported agreement that the affirmative defense applies.

*     *     *

Having found that Plaintiff has failed to allege the existence of a valid contract and that, even if he had, the Statute of Frauds bars its enforcement, the Court finds that Counts One (Breach of Contract), Two (Breach of Oral Joint Venture Agreement), Three (Unjust Enrichment), Four (Declaratory Relief), Five (Breach of Implied Covenant of Good Faith and Fair Dealing), Six (Promissory Estoppel), and Nine (Lost Wages) must be dismissed.  Plaintiff maintains that these counts "are all based on an alleged verbal agreement that is clearly unenforceable under the statute of frauds."  Mot. at 5.  Defendants seemingly agree with Plaintiff, noting that, if the statute of frauds applies, they "concede, at a minimum, that Plaintiff's Counts Seven (Fraudulent Misrepresentation) and Eight (Tortious Interference with

Business Relationships) should remain in play and bypass this affirmative defense."  Resp. to Mot. at 18.

Turning to these two remaining counts, Defendants allege that Plaintiff's claims of fraudulent misrepresentation and tortious interference with business relationships must also fail, given that Plaintiff has neither alleged fraud outside the alleged contract nor actual interference with a business relationship.  *See* Mot. at 18–19.  However, more fundamentally, Plaintiff argues that these claims run afoul of the independent tort doctrine and are barred by Florida's statute of limitations.  *Id*.  The Court first considers the independent tort doctrine and finds that it does not bar these claims.  However, Plaintiff has still failed to bring these claims within the time period required by the statute of limitations and has also failed to state a claim for fraudulent misrepresentation and tortious interference.

### c.  *The Independent Tort Doctrine Does Not Bar Plaintiffs' Fraudulent Misrepresentation and Tortious Interference Claims*

Florida courts apply the "independent tort doctrine [to] bar[] recovery in tort for actions that challenge a breach of contract so as to prevent plaintiffs from recovering duplicative damages for the same wrongdoing."  *Perez v. Scottsdale Ins. Co*., No. 19-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) (internal quotations and citations omitted); *see also Stepakoff v. IberiaBank Corp*., 637 F. Supp. 3d 1309, 1315 (S.D. Fla. 2022).  Thus, "[t]o bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract."  *Perez*, 2020 WL 607145, at *2; *see also Kaye v. Ingenio, Filiale De Loto-Quebec, Inc*., No. 13-61687, 2014 WL 2215770, at *4 (S.D. Fla. May 29, 2014) ("[T]o set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort.").

Defendants maintain that Plaintiff's fraudulent misrepresentation and tortious interference claims are both barred by the independent tort doctrine; the fraudulent misrepresentation claim is "based entirely on Defendants' alleged failure to perform under the parties' purported contract" and the tortious interference claim is "another way Plaintiff is attempting to allege his doomed breach of contract claim[.]"  Mot. at 18; Defs.' Reply at 10. Plaintiff responds that he has set forth allegations that "are also outside the scope of the contract and which caused distinct harm."  Resp. to Mot. at 15 n.4.  But Plaintiff further maintains that "if . . . there was no contractual relationship and therefore no contractual privity, the independent tort doctrine should not apply . . . [and that] alternative pleadings are permissible at this stage of the proceedings."  *Id*. (citing *Minerva Grp., LLC v. Truist Bank*, No. 24-60345, 2025 WL 1517436, at *3 (S.D. Fla. Jan. 13, 2025)).

Here, the independent tort doctrine does not bar Plaintiff's claims given that the Complaint fails to allege a valid, enforceable contract as previously explained—and "[t]he [independent tort] doctrine requires contractual privity between the parties."  *Spears v. SHK Consulting & Dev., Inc*., 338 F. Supp. 3d 1272, 1279 (M.D. Fla. 2018) (citation omitted); *Un2jc Air 1, LLC v. Whittington*, 324 So. 3d 1, at *3 (Fla. 4th DCA 2021) ("[N]ot being a party to the contract, the independent tort doctrine does not apply."); *IPN, LLC v. Posabit, Inc*., No. 22-81506, 2023 WL 5228805, at *4 (S.D. Fla. July 6, 2023) ("[I]f no contracted existed, then the independent tort doctrine would have no impact upon Defendant's Counterclaims anyway.").  Further, given that alternative pleadings are permissible, *see DeRoy v. Carnival Corp*., 963 F.3d 1302, 1308 n. 7 (11th Cir. 2020), as well as the Court's obligation to "resolve any uncertainties about the applicable law in the plaintiff's favor[,]" *see Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023, 2015 WL 1467726, at *4 (S.D. Fla. Mar. 30, 2015)

(citation omitted), the independent tort doctrine does not bar Plaintiff's claims for fraudulent misrepresentation and tortious interference.

### d. *Plaintiff's Fraudulent Misrepresentation and Tortious Interference Claims are Barred by Florida's Statute of Limitations*

Defendants further contend that Plaintiff's fraudulent misrepresentation and tortious interference claims are barred by Florida's statute of limitations. *See* Mot. at 18–20. "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004) (internal quotations and citations omitted). The statute of limitations for fraudulent misrepresentation and tortious interference is four years. FLA. STAT. § 95.11(3)(n); *see also King v. Bencie*, 806 F. App'x 873, 875 (11th Cir. 2020) ("Under Florida law, . . . a legal or equitable action founded on fraud, and a legal or equitable action on an oral contract all must be brought within four years."); *Chauncy v. Gorden,* No. 6:24-CV-573-RBD-EJK, 2024 WL 4793329, at *2 (M.D. Fla. Oct. 18, 2024) ("Tortious interference actions must be brought within four years from the time the cause of action accrues."). And "[a] cause of action accrues when the last element constituting the cause of action occurs." FLA. STAT. § 95.031(1).

Here, Plaintiff's claims for fraudulent misrepresentation and tortious interference arise from "Defendants intentionally and recklessly misrepresent[ing] their payment terms to the Plaintiff with the intention to coerce Plaintiff into action on the basis of the misrepresentation" and "[seeking] to exploit [Plaintiff's business relationship with Player] by using Plaintiff to connect Defendants and [] Player for agent and/or management services[.]" Compl. ¶¶ 102, 108. This alleged fraud and interference was pursuant to the parties' decision to enter into the purported agreement, which occurred in June 2017, by Plaintiff's own admission. Compl. ¶ 22.

But Plaintiff brought this action in November 2023, over six years later. *See* Notice of Removal, [ECF No. 1] ¶ 1. Plaintiff does not address Defendants' statute of limitations defense in his Response, thus failing to explain why these claims should not be time-barred. Accordingly, Plaintiff's claims for fraudulent misrepresentation and tortious interference are barred by the statute of limitations.

### e. *Plaintiff Has Failed to State a Claim for Fraudulent Misrepresentation and Tortious Interference*

Even if the statute of limitations did not bar Plaintiff's claims, Plaintiff has failed to properly plead fraudulent misrepresentation and tortious interference. *First*, "there are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). Plaintiff alleges that "Defendants intentionally and recklessly misrepresented their payment terms to the Plaintiff with the intention to coerce Plaintiff into action on the basis of the misrepresentation", and that "Defendants knew that their representation was false [and] knew[] that their misrepresentation would cause Plaintiff to act on it, enabling them the opportunity to represent MLB Player by taking advantage of Plaintiff's relationship with MLB Player." Compl. ¶¶ 102–104. And, "in reliance on Defendants' misrepresentation, Plaintiff [] sustained injuries." Compl. ¶ 104.

Defendants respond that "[t]his rehashing of the breach of contract claim falls short of the heightened pleading standard of Fed. R. Civ. P. 9(b)." Mot. at 18. The Court agrees. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)

(discussing how "Rule 9(b) requires particularity when pleading 'fraud or mistake[.]'").  Thus, "[i]n order to state a claim for fraudulent misrepresentation, the Plaintiff must identify the false statement or statements of material fact which form the basis of the Plaintiff's fraudulent misrepresentation claim."  *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 337 (Bankr. S.D. Fla. 2013).  Plaintiff's blanket allegation that Defendants "misrepresented their payment terms" does not plead with particularity which term(s) of the alleged agreement form the basis of the fraudulent misrepresentation claim, impermissibly leaving it to "the Court to guess which [terms] . . .  are the allegedly false ones."  *Id*.  And, to the extent that the alleged misrepresentation concerns a promise by Defendants to "hire Plaintiff to serve as an intermediary between Defendants and [] Player and serve as what amounts to be a personal assistant for [] Player", *see* Compl. ¶ 22, Plaintiff's fraudulent misrepresentation claim "must be dismissed for failure to state a cause of action because it is unreasonable, as a matter of law, to rely on an alleged promise of continued at-will employment[.]"  *Martinez v. Goodwill Indus. of S. Fla., Inc.*, No. 11-60256, 2011 WL 13217232, at *2 (S.D. Fla. Apr. 1, 2011).

As for Plaintiff's tortious interference claim, "[t]o succeed in a claim for tortious interference of business relations under Florida law, 'the plaintiff must demonstrate (1) the existence of a business relationship under which the plaintiff has legal rights; (2) an intentional and unjustified interference with the relationship; and (3) damage to the plaintiff as a result of the tortious interference with that relationship.'"  *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273 (S.D. Fla. 2010) (quoting *Ad–Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 849 F.2d 1336, 1348–49 (11th Cir. 1987)).  Plaintiff alleges that "Defendants knew of Plaintiff's business relationship with [] Player and [] Player's family and sought to exploit it by using Plaintiff to connect Defendants and [] Player for agent and/or management services, knowing that Defendants would not be properly

compensating Plaintiff under the contract entered into between Plaintiff and Defendants." Compl. ¶ 108.  Further, "Defendants' interference with Plaintiff's business relationship with [] Player was the proximate cause of the impairment of that business relationship" and "Plaintiff was injured due to Defendants' actions, and he has sustained resulting damages."  Compl. ¶¶ 109–110.  Defendants maintain that, aside from Plaintiff's claim that Defendants interfered with his business relationship with Player, "Plaintiff fails to allege any other element of tortious interference."  Mot. at 19.

Plaintiff's allegations of Defendants' tortious interference are deficient.  While "[a] business relationship need not be evidenced by a contract, [] it generally requires an understanding between the parties [that the business relationship] would have been completed had the defendant not interfered."  *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (internal quotation and citation omitted).  Here, Plaintiff fails to identify *what* exactly would have been completed between Plaintiff and Player had Defendant *not* interfered.  And although Plaintiff points to prior business dealings with Player and Player's family as evidence of his "active business relationship" with Player, *see* Resp. to Mot. at 16, "a plaintiff's past relationship with a past customer cannot be the basis for the existence of a business relationship."  *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 946 F. Supp. 2d 1321, 1338 (S.D. Fla. 2013) (citation omitted).  Accordingly, the Court finds that Plaintiff fails to state a claim for tortious interference with a business relationship.

### III.   Plaintiff is Denied Leave to Amend

Defendants maintain that because "[t]his is Plaintiff's third attempt at alleging the identical central premise and factual allegations [that] [d]ismissal <u>with prejudice</u> is warranted." Mot. at 20.  The Eleventh Circuit "ha[s] never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor [] concluded that

dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016); *see also McTizic v. Bayerische Motoren Werke Aktiengesellschaft*, 834 F. App'x 564, 566 (11th Cir. 2021) ("[W]e conclude the district court did not abuse its discretion in denying further leave to amend. The court gave [plaintiff] two opportunities to amend, and she has not shown how additional amendment would cure the pleading defects it identified.").

Plaintiff responds that "this action was transferred from the United States District Court in the Central District of California to this Court [and that] [t]he second amended complaint filed by Plaintiff is the First Florida Complaint." Resp. to Mot. at 17. However, Plaintiff advances no caselaw in support of this proposition and fails to indicate how any further amendment could cure the deficiencies identified herein. And here, having already been afforded three opportunities to amend his Complaint, Plaintiff has now struck out.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, [ECF No. 86], is **GRANTED**.

2. Defendant Magnus Sports, LLC's Motion to Dismiss Plaintiff's Third Complaint, [ECF No. 87], is **GRANTED**.

3. Plaintiff's Second Amended Complaint, [ECF No. 80], is **DISMISSED** *with prejudice*.

4. Any other pending motions are **DENIED AS MOOT**.

5. The Clerk of Court is directed to mark this case **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 4th day of February, 2026.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**